ARCHIE C. MANN, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 17335.)

Court of Claims, October 11, 1927.

State — claim against for injuries suffered — claimant's automobile struck arch of bridge — negligent construction of road under bridge — contributory negligence not considered under Enabling Act (Laws of 1924, chap. 651) — $35,000 awarded.

The claimant's automobile struck an overhead arch of a bridge which passed over the highway and he suffered severe and permanent injuries. The evidence shows that the right wheels of the claimant's automobile were just off the concrete pavement and that an automobile in that position would strike a part of the archway. It was negligence on the part of the State not to construct the road by building a curb or otherwise so as to prevent one driving an automobile from coming in contact with the overhead arch which would occur as in this case if the automobile left the macadam and traveled on the shoulder of the road.

The Enabling Act, chapter 651 of the Laws of 1924, did not authorize the Court of Claims to consider contributory negligence on the part of the claimant. But if the court did have the right to consider contributory negligence, the facts clearly show that the claimant was not guilty of negligence in driving his automobile so that the right wheels traveled a few inches outside the pavement.

The claimant's injuries were very severe and of a permanent character and he will be permanently disabled and, therefore, an award of $35,000 is made.

CLAIM for personal injuries sustained in an automobile accident alleged to have been caused by the improper and dangerous construction of a State highway.

*George R. Graves* [*Charles D. Newton* and *Edward P. Ward* of counsel], for the claimant.

*Henry P. Nevins* and *A. M. Sperry*, Deputy Attorneys-General, for the defendant.

ACKERSON, P. J.   The claim herein is one that demands damages from the State for personal injuries received by this claimant in an accident which occurred in the township of Avon, N. Y., April 17, 1922, at about five o'clock in the afternoon on the highway known as the State and County Highway No. 623 extending in a generally northerly and southerly direction between the village of Avon and the village of Geneseo in the county of Livingston. This highway was built by the State of New York and was, at the time of the accident, maintained by the State under what was known as the " patrol system."

At the point of the accident the said highway passes under the north arch of a five-arch bridge which extends in substantially the

same general direction as the highway itself, the highway being so constructed that it dips and turns to the left to permit those using the road to pass under the arch described.

At the time and place aforesaid the claimant, a young man about twenty-six years old who was a resident of the village of Nunda, N. Y., approached this arch traveling southerly on the above highway in an automobile driven by himself. The automobile was what is known as a 1918 Hudson Super Six two-door sedan. As the claimant approached this archway over the highway in question, from the north traveling south in this sedan, an automobile which he met just north of the archway forced him to swerve to the right to such an extent that his right-hand wheels slipped off the edge of the metal part of the road. As he entered the archway his right-hand wheels were scraping along the edge of the concrete part of the roadway as he endeavored to get back onto the concrete. As his car was in this situation moving southward under the arch the top of the sedan body came in contact with the roof of the arch badly damaging the car and inflicting grievous bodily injury upon the claimant. This claim, as amended, demands damages to the extent of $100,000. This claim was sent to this court for adjudication by chapter 651 of the Laws of 1924, which reads as follows:

" Section 1. Jurisdiction is hereby conferred on the Court of Claims to hear, try and determine the claim of Archie C. Mann against the State for damages for personal injuries and property damage alleged to have been sustained on the seventeenth day of April, nineteen hundred and twenty-two, at the ' Five Arch Bridge ' so called, in the town of Avon, Livingston County, New York, on the highway known as state and county highway number six hundred and twenty-three, caused through the alleged negligence of the State of New York, while claimant was lawfully proceeding upon and along such highway by failing to maintain such bridge in proper condition and failing to maintain such highway in proper and suitable condition, whereby the same became and was defective and dangerous; and if the court shall find that the bridge so maintained was not proper or in proper condition or that such highway was defective or dangerous or that the construction or maintenance of such highway was in any way defective or improper, and that the injuries sustained were caused by one or more of such conditions, the State shall be deemed to be liable for such condition, defect or omission and the court shall make such award as will reasonably compensate the claimant for the damage and injury sustained.

" § 2. The notice of intention to file such claim and such claim

having been duly filed within the statutory time, as prescribed by law, jurisdiction herein shall attach without the refiling of such notice of intention or such claim.

" § 3. This act shall take effect immediately."

It appears from the evidence that in approaching the arch where the accident happened, from the north as the claimant was traveling at the time, there was a descent in the roadway of about 11 feet between a point in the highway about 300 feet north of the arch and the northerly entrance to the arch. Also that the descent to the arch from the southerly side was about one-half as steep.

The highway went through this arch on more or less of a curve. At about one hundred feet north of the arch the road curved to the east until it reached the southerly part of the arch when it made a decided curve to the west. The nature of this curve is well illustrated by the evidence of the State which is alluded to on page 23 of the State's brief in which it is stated that if the claimant had kept the right-hand wheels of his automobile on the right edge of the concrete as he passed through the arch, going south, the top of his automobile would have been four feet nine and two-tenths inches from the arch on entering the same and one foot and eight-tenths of an inch from the arch as he passed out from the same on the south side. From this situation it is apparent that an automobile of the sedan type or any other covered vehicle moving in a southerly direction on this highway is in great danger in passing through this arch of coming in contact with the same as the turn is made to the right on leaving the arch. It is further apparent that if such a vehicle meets another one going in the opposite direction at or within the arch so that it is compelled to keep at the extreme right or westerly edge of the macadam, the danger that its top will collide with the inner surface or ceiling of the arch on leaving the same is imminent. This is so, for the reason that the curve to the west in this highway comes at the extreme southerly edge of this arch and as the shoulder was smooth and hard and level at this point the tendency would be to edge off from the macadam onto the shoulder as the turn was made. There was no guide or guard rail, curb, mark or other indication on the roadway to apprise a driver of such a vehicle of the danger of such a movement. The driver naturally has his eyes on the road ahead of him. A danger of this nature, from above, is so seldom encountered on State highways that the same would not be foreseen nor expected while the vehicle was moving forward with all its wheels in contact with the concrete roadbed or practically so. Where a roadway is so constructed that the traffic thereon must be confined to the concrete itself or such an accident as the one

36

before us is possible, there should be no shoulder to the road.   A
shoulder such as the one in question, having every appearance of
safety so far as the roadway itself was concerned, and the danger
line thereon not being indicated in any way, could not be other than
" improper " and " dangerous " construction and a constant menace
to the traveling public.

This highway, at the point in question, was constructed in such
a manner that the departure of the wheels of a vehicle passing
over it from the metal part of the highway to such a small extent
as happened here was necessarily accompanied by destruction of
the vehicle and danger to life and limb.   Such construction, it
seems to me, must in the language of the enabling act above set
forth be considered both " improper " and " dangerous."   If the
side of this aperture had been rectangular in shape it would have
been apparent to any driver that he must keep far enough away
not to hit it.   But when the danger is not from the side but from
a circular wall overhead in the shape of an arch the driver may
well think he is safe so long as he keeps reasonably close to the
roadbed which the State has constructed for him to drive on.
The claimant here was in such a position at the time of the accident;
in fact the wheels of his automobile were as nearly on the metal part
of this highway as they could be without actually all being on it.
They all touched the metal part of the roadway but the right-hand
wheels were scraping along the side instead of being up on top of it.

This claimant is an intelligent young man about twenty-six
years of age.   He was in perfect health and in full possession of
his faculties.   He had never been sick a day in his life.   He had
had a large experience for a man twenty-six years of age and was
an expert in the handling of an automobile.   He had seen service
in the World War and in such service had driven automobiles in
France, Germany, Italy and Belgium, and had been officially cited
for bravery.   Thereafter he had been and was, at the time of the
accident, in the garage business at Nunda from which he derived
a net income of between $6,000 and $7,000 per year.   Yet with
his experience and with his knowledge of this arch in question,
this claimant could not have had any intimation of the great danger
he was in as he entered this archway with his right-hand wheels
scraping along the edge of the metal part of the road.   There was
no realization on his part, even with his acquaintance with the
situation, that the departure of the right-hand wheels of his auto-
mobile from the metal part of the highway even by so much as
an inch rendered his life in danger and the smashing of the top
of his automobile sedan certain.

The awful character of the danger here constantly presented to

life and limb is well illustrated in the terrible accident upon which the claim before us is based. Such an accident would be most lamentable in any event but it is especially so when it could so easily have been prevented by the exercise of the most ordinary and simplest human foresight. There was on this highway as it passed under this arch a line on either side beyond which life and limb were exposed to destruction. Such an important line which bounded the zone of safety to human life should not have been left to the imagination. It would seem that the slightest and most casual exercise of human judgment would have suggested the erection at such a place of an impassable and insurmountable barrier. Its absence renders the situation there a death trap and the State guilty of the grossest negligence.

The claimant contends in his brief and offered evidence upon the trial to establish the fact that the metal part of the road beneath this archway extended beyond the point where such an automobile as the one in question might pass under it without striking the structure. The State, on the other hand, made proof of the measurements above referred to whereby it sought to establish the fact that the top of this automobile in question could not get nearer this arch than one foot and eight-tenths of an inch while passing through it so long as its four wheels remained on the concrete part of the road. It would seem to be unnecessary to determine the controversy on that point inasmuch as it stands as the uncontradicted evidence of this case that the mere slipping of the right-hand wheels of a car similar to the one in question, off the right side of the concrete when passing southerly beneath this arch brings the top in collision with it. The wheels of an automobile nearest the edge of the concrete may slip off the edge onto the shoulder at any time for various reasons even when the automobile is being driven by an experienced driver.

A concrete curb or barrier leading out from either side of this arch at both the southerly and northerly entrances thereof to a point in the highway beyond which any vehicle would have been perfectly safe and then parallel with the highway through the arch, of course, would have rendered any such accident as the one before us impossible. The necessity of such a barrier seems obvious. The absence of such a barrier as this, to my mind, in this situation makes out a clear case of negligence on the part of the State.

This claim comes to this court by a special act of the Legislature of this State, as above set forth. The members of that body, we must assume, passed said act after being made acquainted with the situation before us. The act has been called liberal in its terms, and so it is. It apparently relieves the court from passing upon

the question of the claimant's contributory negligence even if he could be charged with any. The members of the Legislature undoubtedly had in mind, when they passed this act, the service which this young man had rendered to his country. The act indicates that they desired to make provision, as well as provision could be made in such a case, for the care and comfort of Archie C. Mann providing his terrible injuries were incurred from, among other things, the " improper " or " dangerous " construction of a public highway.

The construction of this highway at the point in question in the manner above described with the imminent danger to life and limb so inherent in such a situation cannot, it seems to me, be considered otherwise than " improper " and " dangerous."

It is not for us to criticise the Legislature because of the liberality of the act in question, so long as it acted within its rights under the Constitution. Its will, as there expressed, is a mandate to this court which must be obeyed regardless of the court's views of the propriety of its action. It had a perfect right to withhold from our consideration the question of the claimant's contributory negligence, which it has done.

Judge WERNER in the case of *Ives* v. *South Buffalo Railway Co.* (201 N. Y. 271, 289) used this language: " We have said enough to show that the statutory modifications of the ' fellow-servant ' rule and the law of ' contributory negligence ' are clearly within the legislative power. These doctrines, for they are nothing more, may be regulated or even abolished."

And Chief Judge CULLEN in a concurring opinion in the same case (at p. 318) said: " I concede that the legislature may also abolish as a defense the rule of assumption of risk and that of contributory negligence unless the accident proceeds from the willful act of the employee."

But even though the question of contributory negligence were before us and we were compelled, as in the ordinary case, to hold that its absence was a prerequisite to the claimant's right to recover, yet even in that event the decision must necessarily have been the same. The claimant had the right to assume, not knowing to the contrary, that so long as his automobile was practically all on the concrete he was safe. This claimant is entitled to a substantial award against the State. His injuries are severe, and to a large degree permanent in their ill effects. He was unconscious for seventeen days after the accident and confined to his bed for about two months. His spine and back were injured so he had to be strapped up; he carried fluid in his pleural cavity for six months and sustained a loosening of the sacro-iliac joint. He suffered concussion of the brain which has been followed by epileptic

seizures and the physicians now declare him to be an epileptic and that he will be subject to such seizures the remainder of his life. They also declare that this epilepsy is one of the results of the accident in question.

The claimant constantly suffers pain, his collar bone is raised up, his shoulder is weakened, he is lame, has pain in walking, he cannot sleep without medicine, his eye sight has been seriously affected, he has been unable to do any work since the accident and his earning power had entirely disappeared, all as a result of the accident in question.

The court is perfectly justified in view of the enabling act and the evidence in this case of making an award to the claimant in the sum of $35,000.